FILED
2013 Apr-23 PM 03:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DISTRICT**

| | |
|---|---|
| **RODERICK GRAHAM;** | ) |
| | ) |
| **PLAINTIFFS,** | ) |
| | ) |
| **v.** | ) **CASE NO.:_** CV-13-HGD-0748-S |
| | ) |
| **TASA GROUP, INC.;** | ) |
| **RICHARD BECKETT;** | ) |
| **DAVID SELTZER;** | ) |
| **LEONARD SCHARTZ, doing business** | ) |
| **as SCHWARTZ & McCLURE** | ) |
| | ) |
| **DEFENDANTS.** | ) |

## FIRST COMPLAINT

### I.    INTRODUCTION

1.   This is an action brought by an individual consumer for statutory
     damages under the RICO statutes and Fair Debt Collection Practices Act,
     15 U.S.C. § 1692 (hereinafter referred to as the "FDCP A"), resulting
     from Defendants' violations of said statutes by engaging in fraudulent
     and unfair debt collection practices.

### II    JURISDICTION

2.   The jurisdiction of this court to determine this action arises under 15
     U.S.C. §1692k(d), 28 U.S.C. §1337 and 28 U.S.C. §1332.  The plaintiff

alleges that the defendants are subjected to this Court's federal question jurisdiction and engaged in conduct in violation of the Fair Debt Collection Practices Act (FCDPA), 15 U.S.C. §1692 and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.  Furthermore, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) & 157 (b)(2) over matters related to the legality of the debt, defendant's conduct during collection of the debt, and other actions of the defendants that arise in, or are related to, this action; and therefore, this Court has original subject matter jurisdiction of said matters. The void contract in question relates to an expert testifying in a case located in the United State District Court for Northern District of Alabama regarding personal injuries Cosby had received during a train accident. Cosby had lost a leg in the accident, and had no medical insurance.  The lawsuit was an attempt to recover compensation for the lost of her leg. The conduct complained of in the complaint occurred in Alabama. Moreover, the federal case giving rise to the alleged debt took place in Alabama as well.

## III   **PARTIES**

3.    The plaintiff, Roderick Graham, is a natural person residing in the County of Shelby, and State of Alabama.

2

4. The defendant, TASA Group, Inc., is a Pennsylvania corporation engaged in the business of producing expert witnesses to testify in case in the State of Alabama with its principal place of business located at 1166 Dekalb Pike, Blue Bell, PA 19422.

5. The defendant, Richard Beckett, is a natural person who resides at 27 Marigold Drive, Okatie, South Carolina 29938. He is engaged in the business of providing expert testimony, and illegally contracted to provide expert testimony in the state of Alabama.

6. The defendant, David Seltzer, is a Pennsylvania attorney engaged in the business of bill collector, and collects debt for corporations who are doing business in the State of Alabama with its principal place of business in the United States located at 610 Harper Avenue, Jenkintown, Pennsylvania 19046-3207.

7. The defendant, Leonard Schwartz, is an Alabama attorney engaged in the business of bill collector, and collects debt for corporations who are doing business in the State of Alabama with its principal place of business in the United States located at 1609 Richard Arrington Jr. Blvd. South, Birmingham, Alabama 35205.

8. The defendants are engaged in the collection of debts from consumers using the mail and telephone. Defendants regularly attempts to collect

3

consumer debts alleged to be due to another. Defendants are "debt collectors" as defined by the FDCP A, 15 U.S.C. §1692a(6).

**IV    STATEMENT OF FACT**

9.    On or around July 6, 2009, the plaintiff sought to retain an expert to testify in *Barbara Cosby v. BNF Railroad* which was filed in the United States District Court for the Northern District of Alabama.

10.    The plaintiff contacted TASA Group, Inc. by phone about getting an expert to possibly testify in *Cosby v. Burlington Northern Railroad*. The *Cosby* case was in the Northern District of Alabama.  The *Cosby* case concerned a train accident which occurred in Birmingham, Alabama.

11.    On July 8, 2009, TASA called plaintiff back which was a couple of days later. TASA told plaintiff over the phone that it would cost plaintiff $894.00 to get an initial report from the expert and $500.00 to designate the expert as an expert witness in the Alabama case.

12.    As which time, plaintiff asked the TASA representative whether the retainer will cover the initial report required by the Federal Rules of Civil Procedures in order to designate the expert in the case.  The TASA representatives assured the plaintiff that the $1,394.00 payment would cover the cost of the initial report.  Plaintiff told the representative for

4

TASA that if the cost of the initial report exceeds more than the retainer, then the plaintiff wanted to terminate the agreement, and did not want to use the expert in the case. The representative assured plaintiff that the initial fee would cover the cost of the initial report.

13.  The plaintiff sent a check to the defendant for the initial report and designation of the expert.

14.  Prior to sending the check on or about July 11, 2009, the plaintiff called TASA again and the TASA representative again assured plaintiff that $1,394.00 would cover the cost of the initial report required to designate the expert as an expert witness in the federal case.

15.  Plaintiff agreed to pay $894.00 for the initial report from the expert, and $500.00 for designating the witness as an expert witness in the case. In fact, the plaintiff paid the defendant by check for the initial report and for the designation of the expert.

16.  The plaintiff tried to designate the expert as a witness in the case; however, the expert would not provide the initial report required by the Federal Rules of Civil Procedure to designate him as an expert in the case. When the plaintiff would ask the expert, Richard Beckett, about the initial report, he would stall by saying that he did not know whether he could help plaintiff in the case. After several phone calls

5

about the initial report, plaintiff had no choice, but to informed the court and opposing counsel in the *Cosby* case that he would not use an expert in the case.

17. Afterward, plaintiff called Richard Beckett and TASA, and told them that he would not use Richard Beckett as an expert in the case. Plaintiff further told the defendants that he did not need or want an initial report from the expert.

18. Despite plaintiff never receiving an initial report from the defendant during the pendency of the case and despite TASA having assured plaintiff that $1,394.00 would cover the cost of the initial report and designation of the expert, the defendant is now attempting to charge the plaintiff for more than $5,000.00 worth of services that were not contracted for by plaintiff, and services that were never provided to plaintiff.

19. On September 24, 2009, plaintiff received a bill through the mail from the defendant for $6,034.43. The plaintiff did not owe the amount in question.

20. From January 26, 2010 to March 31, 2013, the plaintiff received several letters from David Seltzer and TASA falsely claiming the plaintiff owes $5,140.43 to TASA. Again, the plaintiff does not owe any money to the

defendant.  The plaintiff wrote David Seltzer informing him that the amount was not owed, and asking for an itemization of the alleged time of the expert and itemization of the debt. David Seltzer never provided the requested itemizations, and never investigated the debt to determine whether the defendant's false bill was accurate.  Currently, David Seltzer and Leonard Schwartz is attempting to collect the fraudulent debt.

21.    On or about May 11, 2011, the defendants obtain a default judgment through false representations against the plaintiff in Pennsylvania without properly serving the plaintiff.  The plaintiff did not discover the fraudulent misrepresentation until he received a copy of the default judgment on or about May 28, 2011.

## COUNT I
### FRAUD

22.    The plaintiff adopts and incorporates by reference the allegations and averments contained in paragraphs 1 and 21 as if set out herein.

23.    The plaintiff avers that the defendants made certain false and fraudulent representations to him, and described, herein above.

24.    Defendants' agent told the plaintiff on or about July 8, 2009 that if he paid $894.00, it would cover the cost of the initial report to designate the expert and that he need to pay $500 to cover the cost to designation

7

of the expert. Furthermore, the defendants' agent told the plaintiff that the $500 for designating the expert would cover the initial report required to designate the expert as a witness in the *Cosby* case. The plaintiff wanted to make sure that the expert could help him before agreeing to pay him a large sum of money. The plaintiff paid more than $1,394.00 to cover the services for the initial consultation and designation of the expert. The plaintiff told the defendant that if the initial consultation/report was not going to the retainer then the plaintiff did not want to use the expert. At which point, the plaintiff was told that the retainer would cover the cost of the initial report, and agreed not to exceed the retainer. After the plaintiff paid TASA to designation the expert as a witness, the defendants failed to provide the initial report in order for the plaintiff to designate an expert in the case. As a consequence, the plaintiff in the *Cosby v. Burlington Northern* case was forced to inform the opposing parties in said case that the plaintiff would not use an expert in the case. The plaintiff also informed TASA and Richard Beckett that he would be using the expert as a witness in his case. Several months afterward, the defendants started to falsely claiming that the plaintiff owed the defendants an extra $5,000.

25. Defendants represented to the plaintiff the following:

8

A.    That on or about July 3, 2009, the retainer would cover the initial report and designation of the expert;

B.    That on or about July 3, 2009, the cost of the initial report and designating the expert witness would not exceed the retainer;

C.    That on or about July 3, 2009, the plaintiff told the defendant that he wanted the initial report for the designation of the expert before deciding to pay any additional funds for services of the expert.  The defendant agreed to said condition;

D.    That on May 5, 2011, the defendant went into court in Philadelphia without properly serving the plaintiff, and obtained a default judgment against the plaintiff after making false allegations that the plaintiffs owes the defendant more $5,000, and that the plaintiff has never paid the defendant any money.

26.    The misrepresentations of material facts were false and defendants knew they were false and the defendant, without knowledge of the true facts, recklessly misrepresented the facts, or were false and were made by the defendants by mistake, but it was their intention that plaintiff should rely on them.   The plaintiff did not discover the fraudulent misrepresentation until he received a copy of the default judgment on or about May 28, 2011.

27.   The plaintiff believed the defendants' misrepresentations that the facts
      surrounding the retainer.  The plaintiff relied upon the defendants'
      false and fraudulent misrepresentations, and acted upon the
      misrepresentations to his detriment.

28.   Defendants' actions as described above constitute fraud,
      misrepresentations of material fact, suppression of material fact,
      deceit and fraudulent deceit as set forth by Alabama Code §§6-5-100,
      6-5-101, 6-5-102, 6-5-103 and 6-5-104.

29.   The wrongful conduct on behalf of both the named defendants
      combined and concurred to proximately cause plaintiff to suffer
      damages, financial loss, economic hardship and mental anguish.

30.   The defendants entered into a scheme to defraud the plaintiff by:

      A.   Falsely representing that the plaintiffs owes the defendants
           more than $5,000;

      B.   Falsely representing to the plaintiffs that $1,394.00 would
           cover the cost of the initial report and designating the expert.

      C    Falsely obtaining a default judgment based false
           representations.

      D.   Falsely claiming that TASA and Richard Beckett are entitled
           to more than $5,000, when the Beckett was not used as

                                    10

expert witness by the plaintiff in *Cosby v. Burlington Northern*.

31. The scheme to defraud engaged in by all defendants is part of a practice of wrongful conduct perpetrated upon persons similarly situated as the plaintiff.

32. As a direct and proximate result of defendants' combining and concurring negligent and/or wanton acts, the plaintiff was caused to suffer damages, financial loss, economic hardship and mental anguish.

**WHEREFORE, PREMISES CONSIDERED,** plaintiff demands judgment against the defendants, separately and severally, for compensatory and punitive damages, and interest from the date of injury, costs and any other relief to which plaintiff may be entitled.

## COUNT II:
## THEFT OF PROPERTY

33. The plaintiff adopts and incorporates by reference the allegations and averments contained in paragraphs 1 and 21 as if set out herein.

34. On July 8, 2009, the defendant promised to provide an initial report for $1,394.00 in order for the plaintiff to designate the defendant as an expert in the case. The defendant did not provide the initial

11

report On May 5, 2011, the defendant went into a Pennsylvania court without properly servicing the plaintiff, and obtained a default judgment falsely claiming that the plaintiff had agreed to pay them $5,140.00 and had not made any payment to the defendant.

35. The defendants paid more than $1,394.00 to the defendant for the initial report and designation of the expert in the *Cosby v. Burlington Northern* case. The defendant did not provide the plaintiff with the initial report. In 2011, the defendant started claiming that the plaintiff never made a payment for the initial report, despite the defendant having failed to provide the plaintiff with the initial expert report required to designate an expert in the Cosby case under the Federal Rules of Civil Procedures. The defendant refused to provide an expert report forced the plaintiff to tell the court that he would not use an expert in the case.

36. The plaintiff has paid the amount agreed upon for the designation of the expert and initial report.

37. In May of 2011, the defendant went into court in Pennsylvania, and claimed the plaintiff has never made payment for the expert. The defendant went into court in Philadelphia without properly serving the plaintiff, and obtained a default judgment against the plaintiff after

making the false allegations.  The defendant stole the plaintiff payment of

more than $1,394.00 by deception and trick, and has refused to

acknowledge payment of the retainer.

**WHEREFORE, PREMISES CONSIDERED,** plaintiff demands a judgment

of $85,000 against defendants, separately and severally, for compensatory

and punitive damages, and interest from the date of injury, costs and any

other relief to which plaintiff may be entitled.

## COUNT III:
### NEGLIGENT AND WANTON HIRING, TRAINING, SUPERVISION AND RETENTION

38.  The plaintiff adopts and incorporates by reference the

allegations and averments contained in paragraphs 1 and 21 as if

set out herein.

39.  Defendants owed a duty to the plaintiff to use reasonable care to

determine the qualifications, skills, abilities and employment history of

its agents and employers prior to hiring any such agent or employee.

Defendants breached that duty and failed to use reasonable care to

determine the qualifications, skills, abilities and employment history of

its agents and employees.

40.  Defendants owed a duty to the plaintiff to thoroughly investigate the

past work history of its agents and employees to ensure that its agents

properly and professionally represent the corporate defendants and are capable of honestly, accurately and fairly transacting business with the general public. Defendants breached that duty and failed to thoroughly investigate the past work history of its agents and employees to ensure that it's agents properly and professionally represent the corporate defendants and are capable of honestly, accurately and fairly transacting business with the general public.

41. Defendants owed a duty to the plaintiff to promptly act to protect the best interests of its customers and/or clients upon reports of, suspicion of and/or confirmation of any wrongdoing on the part of one or more of its agents or employees. Defendants breached that duty and failed to act promptly to protect the best interests of plaintiff upon reports of, suspicion of and/or confirmation of any wrongdoing on the part of one of its agents or employees.

42. Defendants owed a duty to the plaintiff to adequately or properly supervise its agents.  Defendants breached that duty and failed to adequately and properly supervise its agents.

43. Plaintiff averred that the defendants negligently or wantonly investigated, hired, trained, supervised and/or retained its agents. Said negligent or wanton conduct proximately caused plaintiff to suffer

14

damages, financial loss, economic hardship and mental anguish.

44.     As a direct and proximate result of defendants' combining and

concurring negligent and/or wanton acts, plaintiff was caused to

suffer damages, financial loss, economic hardship and mental

anguish.

**WHEREFORE, PREMISES CONSIDERED,** the plaintiff demands

judgment against defendants, separately and severally, for compensatory

and punitive damages, plus interest from the date of injury, costs and any

other relief to which plaintiff may be entitled.

## COUNT IV:
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICE ACT

45.     The plaintiff adopts and incorporates by reference the allegations

and averments contained in paragraphs 1 through 21 as if set out

herein.

46.     Defendants' violations of the statute include, but are not limited to

the following:

A.  The defendants violated 15 US.C. § 1692b(2) by

communicating to a third person that the plaintiff owes a debt;

B.  The defendants violated 15 U.S.C. § 1692b(3) by talking to a

third party and using language that suggests the debt collector

is in the business of debt collection and/or that suggests that

15

the communication relates to the collection of a debt.

C. The defendants violated 15 U.S.C. § 1692e(1 0) by using deceptive means and misleading representations to collect the debt and obtain information concerning plaintiffs' bank account;

D. The defendants violated 15 US.C. §1692d(1) by using criminal means to harm the plaintiff 's reputation and to steal the money or property of the plaintiffs;

E. The defendants violated 15 US.C. §1692c(b) by contacting and communicating with third parties, the plaintiffs' employee, without the authorization of the plaintiffs;

F. The defendants violated 15 U. s. C. § I 692d( 6) by making telephone calls without meaningful disclosure of the caller's identity;

G. The defendants violated 15 U.S.C. § 1692e(2) by misrepresenting the legal status of the debt;

H. The defendants violated 15 US.C. §1692g by making a threat of suit during the debt validation request period in a manner that overshadowed any alleged notice of validation rights and would create confusion for a least sophisticated consumer about his

rights;

I.  The defendants violated 15 U.S.C. § 1692g(a) by failing to
    convey to the plaintiff the validation notice;

47.  As a result of the defendants' violations of the Federal Debt Collection
     Practices Act, the defendants are liable to the plaintiff for declaratory
     judgment that defendants' conduct violated the FDCPA, and plaintiff's
     actual damages, including mental distress, and statutory damages and
     attorney's fees and costs.

**WHEREFORE, PREMISES CONSIDERED,** plaintiff respectfully requests that

judgment be entered against the defendants as follows: (a) a declaratory

judgment that the defendants' conduct violated the FDCP A, and injunctive

relief for the said violation; (b) actual damages; (c) statutory damages in the

amount of One Thousand ($1,000.00) Dollars per violation as set forth in 15

U.S.C. §1692k; (d) legal fees and cost as set forth in 15 U.S.C. §1692k; (e) for

such other and further relief as the Court may deem just and reasonable.

## COUNT V
## VIOLATION OF RICO STATUTE

48.  The plaintiff adopts and incorporates by reference the allegations and
     averments contained in paragraphs 1 and 21 as if set out herein.

49.  This count is brought by the plaintiff against Defendants David Seltzer,
     Richard Beckett, TASA Group, Inc. and Leonard Schwartz (collectively

the "RICO Defendants") alleging a cause of action under 18 U.S.C.

§1962(d), for conspiring to violate 18 U.S.C. § 1962(c).

50.  At all relevant times, the plaintiff and RICO Defendants, David Seltzer,

Richard Beckett and Leonard Schwartz,  were "persons" pursuant to

§1961(3).

51.  At all relevant times, TASA Group, Inc., a corporation, was an

"enterprise" pursuant to § 1961(4).

52.  At all relevant times, the Law Offices of David Seltzer, a corporation, was

an "enterprise" pursuant to § 1961(4).

53.  At all relevant times, Richard Beckett, a natural person, was an

"enterprise" pursuant to § 1961(4).

54.   At all relevant times, the two corporations and individuals were

engaged in, and their respective activities affected, interstate and

foreign commerce, pursuant to §1961(4).

55.   All of the USPS mailings and the numerous telephone calls, faxed

communications, e-mails, bank checks and internet postings were made

in furtherance of the Fraudulent Expert Witness Scheme and the

subsequent scheme to collect money not owed the defendants.

Therefore, all of these communications were made in violation of the

mail and wire fraud statutes. The plaintiffs were defrauded by one or

18

more of these mails and wires. This pattern of mails, bank and interstate communications occurred over a period of 27 months from the date the Fraudulent Expert Witness Scheme began when TASA Group, Inc. In carryout the Fraudulent Expert Witness Scheme, the defendant entered into a contract to do business in the State of Alabama in violation of Alabama law, because the defendant did not have a certificate to do business in the state of Alabama. The Fraudulent Expert Witness Scheme was furthered with the hiring of the Law Offices of David Seltzer to collects monies from the defendant that was not owed to TASA Group, Inc. The Fraudulent Expert Witness Scheme victimized other persons in addition to the plaintiffs.

56. As detailed above, each of the RICO Defendants agreed to the Theft by Trick and Fraudulent Expert Witness Scheme, and also, to further perpetrate it through the three RICO enterprises, Law Offices of David Seltzer, TASA Group, Inc. and Richard Beckett.

57. As detailed above, the individual RICO Defendant was in a managerial position in the Law Offices of David Seltzer, TASA Group, Inc. and/or Richard Beckett enterprises and also directed subordinates to carry out the Theft by Trick and Fraudulent Electronic Check Scheme, which they did.

58.   Accordingly, each RICO Defendant agreed to participate in the affairs of
      one of the Law Offices of David Seltzer, TASA Group, Inc. and/or Richard
      Beckett enterprises through the commission of the Theft by Trick and
      Fraudulent Expert Witness Scheme, which is a pattern of racketeering
      activity (mail and wire fraud).

59.   Thus, plaintiffs assert claims against all RICO Defendants for conspiring
      to violate 1962(c), which prohibits any person employed by or
      associated with an enterprise from participating in the affairs of the
      enterprise through a pattern of racketeering activity.

60.   This conspiracy to violate § 1962(c) is a violation of § 1962(d).

## RICO PRAYER FOR RELIEF

### DAMAGES:

a.    As a result of the above-described racketeering activity, the plaintiffs
      have been collectively damaged in their business and/or property in an
      amount of no less than $85,000.  The damages to his business and/or
      property, include more than $1,300 in stolen monies plus lost interest
      on the money and lost wages from the numerous hours wasted in
      addressing this matter.

b.    Pursuant to § 1964(c), the plaintiffs are entitled to recover three fold
      their damages plus costs and attorneys' fees from the RICO defendants.

## INJUNCTIVE RELIEF:

c.     Pursuant to § 1964(a), the plaintiffs are entitled to appropriate
injunctive relief to prevent and to restrain future RICO violations,
including but not limited to an order by the Court (a) to require the
immediate dissolution of Law Offices of David Seltzer, TASA Group, Inc.
and/or Richard Beckett and all of their offices and branches, (b) to
require all of the defendants, TASA Group, Inc. and/or Richard Beckett,
to cease any and all association with Law Offices of David Seltzer, and
(c) to require that Law Offices of David Seltzer, TASA Group, Inc. and/or
Richard Beckett, and all of the their offices and branches turn over any
and all information relating to fraud, breach of duty, and other criminal,
civil, and/or administrative violations to the appropriate local, state,
and federal law enforcement agencies.

## COUNT VI
### TEMPORARY RESTRAINING ORDER

61.    The plaintiff adopts and incorporates by reference the allegations and
averments contained in paragraphs 1 and 21 as if set out herein.

62.    Upon proper showing, the court may grant the Department a temporary
or permanent injunction, or restraining order, to preserve a defendant's
assets.

63.    The plaintiff is informed and believes, and on that basis alleges, that
       monies paid by plaintiff for the designation of the expert were received
       by the defendant and deposited into bank: accounts under the control of
       and/or for the benefit of the defendant.

64.    The defendant is trying to collect funds that are not owed to the
       defendant and that has already been paid to the defendant.  The
       defendant filed a suit in Pennsylvania court to enforce a court without
       properly providing service to the plaintiff, and obtained a judgment on a
       contract that is void under Alabama law.

65.    In the manner described above, Defendants illegally and fraudulently
       obtained a judgment against the plaintiff, and is now trying to collect on
       a judgment without providing the plaintiff with due process.

## COUNT VII
## PRELIMINARY INJUNCTION

66.    The plaintiff adopts and incorporates by reference the allegations and
       averments contained in paragraphs 1 and 21 as if set out herein.

67.    The plaintiff has a clear legal and equitable right under the law to
       prevent the defendants from collecting debt not owed to the defendants.

68.   The plaintiff is entitled to a preliminary injunction prohibiting

defendants from collecting on a judgment that was obtained by fraud,

and without the plaintiff having been given his due process rights.

## COUNT VIII
## PERMANENT INJUNCTION

69.   The plaintiff adopts and incorporates by reference the allegations and

averments contained in paragraphs 1 and 21 as if set out herein.

70.   The plaintiff has a clear legal and equitable right under the law to

prevent the defendants from collecting debt not owed to the defendants.

71.   The plaintiff is entitled to a preliminary injunction prohibiting

defendants from collecting on a judgment that was obtained by fraud,

and without the plaintiff having been given his due process rights.   The

Department is informed and believes that said judgment should be

executed, until the plaintiff has been allowed to properly adjudicate his

rights in this case, and has been given his due process rights under the

law;

***WHEREFORE, PREMISES CONSIDERED***, the plaintiff respectfully prays for the

following:

a.   That the Court temporarily, preliminarily, and upon Final Judgment,

permanently prohibit Defendants from collecting a judgment where the

23

plaintiff was denies his due process rights, from collecting money not owed to the plaintiff and from collecting on a void contract under Alabama law, until the plaintiff has been allowed to properly adjudicate his rights in this case, and has been given his due process rights under the law; and

b. Grant such additional and further ancillary relief as the court deems appropriate.

Respectfully submitted,

/s/ Roderick Graham
Roderick Graham, Esq.
P.O. Box 43334
Birmingham, Alabama 35243
(205) 427-9494
(205) 981-6785 Facsimile

## **DEMAND FOR JURY TRIAL**
**PLEASE TAKE NOTICE THAT PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS ACTION.**

24