FILED

2015 Mar-02  PM 04:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RODERICK GRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:13-cv-00748-LSC |
| | ) | |
| TASA GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF OPINION

### I.    Introduction

Plaintiff Roderick Graham ("Graham") filed this action on April 22, 2013,

naming as defendants Tasa Group, Inc. ("Tasa Group"), Richard Beckert, David

Seltzer, and Leonard Schwartz d/b/a Schwartz & McClure.  Graham alleges that all

defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692

("FDCPA") and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.

§ 1961 *et seq.* ("RICO"), and asserts fraud, theft of property, and negligent and

wanton hiring, training, supervision and retention claims under Alabama state law.

Graham's complaint seeks damages, a temporary restraining order, a preliminary

injunction, and a permanent injunction.

This Court currently has for consideration several pending motions:

1)      Defendant Leonard Schwartz filed a motion to dismiss Graham's complaint for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). (Doc. 7.)

2)      Graham filed a motion to amend his complaint within his response to defendant Leonard Schwartz's motion to dismiss. (Doc. 12.)

3)      Defendants Tasa Group, Richard Beckert, and David Seltzer filed a joint motion to dismiss Graham's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6). (Doc. 14.)

4)      Graham filed a motion to strike an exhibit used by defendants Tasa Group, Richard Beckert, and David Selzter in their motion to dismiss. (Doc. 32).

5)      The magistrate judge previously assigned to the case issued a report and recommendation regarding a Suggestion of Death filed on the record as to defendant Leonard Schwartz, and Graham filed a timely objection thereto. (Docs. 23 and 24.)

6)      Defendants Tasa Group, Richard Beckert, and David Seltzer have twice renewed their pending motion to dismiss. (Docs. 39 and 56.)

This opinion will explain why all of the motions to dismiss are due to be granted and this case dismissed for lack of subject matter jurisdiction,[1] Graham's motion to amend his complaint is due to be denied, the magistrate judge's report and recommendation is due to be accepted and adopted, and Graham's motion to strike is due to be denied as moot.

---

[1] As explained herein, Graham's federal claims are due to be dismissed with prejudice and his state-law claims dismissed without prejudice.

II.    Facts[2]

Graham is an attorney residing in Alabama.  (Doc. 1 at ¶ 3.)  Defendant Tasa

Group is a Pennsylvania corporation that delivers expert witness referrals to attorneys

throughout the country.  (*Id.* at ¶ 4.)  In or around July 2009, Graham engaged Tasa

Group to retain an expert witness to testify in a case in federal court in Alabama in

which Graham was acting as an attorney.  (*Id.* at ¶ 9-10.)  Graham entered into an

agreement with Tasa Group whereby Tasa Group agreed to facilitate a relationship

between Graham and defendant Richard Beckert ("Mr. Beckert") in exchange for

Graham making payments to Tasa Group.  (*Id.* at ¶ 16.)  Mr. Beckert is an individual

residing in South Carolina who provides expert services in litigation.  (*Id.* at ¶ 5).

According to Graham, Tasa Group quoted him an initial fee of $1,394.00 and told

Graham that said fee would cover the cost of providing the initial expert report

required by the Federal Rules of Civil Procedure.  (*Id.* at ¶ 11-15.)  Graham sent a

check to Tasa Group in the amount of $1,394.00.  (*Id.* at ¶ 13.)  However, when

Graham would ask Mr. Beckert about the initial report, he would "stall by saying that

he did not know whether he could help [Graham] in the case."  (*Id.* at ¶ 16.)  Graham

---

[2]  For purposes of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court treats facts alleged in the complaint as true and construes them in the plaintiff's favor. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012). Unless otherwise noted, the Court will do so here.

alleges that "[a]fter several phone calls about the initial report, [Graham] had no choice, but to inform the court and opposing counsel in the [] case that he would not use an expert in the case." (*Id.*). Graham then called Tasa Group and Mr. Beckert and told them that he did not want to use Mr. Beckert as an expert and that he no longer wanted an expert report. (*Id.* at ¶ 17.)

On September 24, 2009, Graham received a bill from Tasa Group for $6,034.43. (*Id.* at ¶ 19.)  From January 26, 2010 to March 31, 2010, Graham received several phone calls from defendant David Seltzer ("Mr. Seltzer"), Tasa Group's Pennsylvania attorney, and Tasa Group, claiming that Graham owed Tasa Group $5,140.43. (*Id.* at ¶ 20.)  Tasa Group then filed a complaint against Graham in the District Court for the Commonwealth of Pennsylvania, Montgomery County, to recover the monies it said Graham owed.  Tasa Group engaged Mr. Seltzer to act as Tasa Group's legal counsel in that lawsuit.  The Pennsylvania complaint alleged that Graham owed Tasa Group $5,140.43 for professional services rendered.  Despite being served,[3] Graham did nothing to defend against the Pennsylvania lawsuit.  Tasa

---

[3] As will be explained herein, Graham's allegation that he was not properly served is not a fact that must be taken as true, but is instead a legal conclusion and is belied by the record.  *See Aldana v. Del Monte Fresh Produce, N.A.*, 416 F.3d 1242, 1248 (11th Cir. 2005) (a court need not accept as true "unwarranted deductions of fact" or legal conclusions).

Group obtained a default judgment against Graham on May 2, 2011.[4]

That judgment was then domesticated—through the efforts of Tasa Group's Alabama counsel, defendant Leonard Schwartz ("Mr. Schwartz")—in the Circuit Court of Jefferson County, Alabama, in case number CV-2011-01855.  Judgment was entered against Graham in the Circuit Court of Jefferson County, Alabama, on October 12, 2011.[5]

---

[4]  The defendants have attached documents from the Pennsylvania lawsuit to their motion to dismiss.  However, Graham also acknowledges in his complaint that a default judgment was obtained against him in Pennsylvania state court.  *See* Doc. 1 at ¶ 21 ("On or about May 11, 2011, the defendants obtained a default judgment through false representations against the plaintiff in Pennsylvania without properly serving the plaintiff.  The plaintiff did not discover the fraudulent misrepresentation until he received a copy of the default judgment on or about May 28, 2011."); *see also id.* at p. 9 ¶ D.  Because Graham referenced it in his complaint, this Court may consider the Pennsylvania action and the default judgment in ruling on these motions to dismiss.  *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (noting that, under Rule 12(b)(6), " . . . a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed."); *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (noting that, when "analyzing the sufficiency of the complaint, we limit our consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed").

[5] Although not mentioned in Graham's complaint, the Court may also nonetheless consider the domesticated judgment in Alabama.  When a motion to dismiss, such as this one, is brought pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, the Court may consider factual matters outside the pleadings.  *See Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) ("[W]here a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits.").  Furthermore, "a court ordinarily may treat documents from prior state court adjudications as public records." *Boateng v. InterAmerican University, Inc.*, 210 F.3d 56, 60 (1st Cir. 2000) (holding that "a court may look to matters of public record in deciding a Rule 12(b)(6) motion without converting the motion into one for summary judgment") (citing *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994)).

Graham, representing himself *pro se*, filed the instant lawsuit against Tasa Group, Mr. Beckert, Mr. Seltzer, and Mr. Schwartz in April 2013.  This action was reassigned to the undersigned on February 12, 2015.  (Doc. 58.)

III.    Discussion of Pending Motions

A.    The Magistrate Judge's Report and Recommendation

On October 14, 2013,  counsel for Mr. Schwartz filed a Suggestion of Death Upon the Record, stating that Mr. Schwartz died on October 13, 2013.  (Doc. 22.) The magistrate judge previously assigned to this case entered a report and recommendation on January 23, 2014, recommending that the district court dismiss all of Graham's claims against Mr. Schwartz pursuant to Federal Rule of Civil Procedure 25(a)(1), because over 90 days had passed since the Suggestion of Death was filed and Graham had not filed a motion for substitution of Mr. Schwartz's personal representative as a defendant.[6] (Doc. 23.)  Graham filed a timely objection to the report and recommendation.  (Doc. 24.)

Pursuant to Fed. R. Civ. P. 72(b)(3), this Court has reviewed the magistrate

---

[6]  Fed. R. Civ. P. 25 provides in relevant part:

(1) Substitution if the Claim Is Not Extinguished. If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

judge's report and recommendation and Graham's objection to it *de novo*.  Graham argues that the 90-day period of time did not begin running at the filing of the Suggestion of Death for several reasons: 1) the Suggestion of Death did not identify the decedent's successor or representative; 2) the Suggestion of Death was not filed by either a party or by a representative of the decedent, and the decedent's attorney does not count as an appropriate representative; and 3) the Suggestion of Death was not served on the decedent's successor or representative.  In making these arguments, Graham incorrectly attributes the rules and requirements for filing a *motion for substitution of a party* under Fed. R. Civ. P. 25(a)(1) to the filing of the Suggestion of Death.  Nothing in Rule 25 requires the Suggestion of Death to identify the decedent's successor or representative; nor does it say anything about who may properly file the Suggestion of Death.  The only requirement Rule 25 sets forth for the Suggestion of Death is that it must be served on all parties as provided for in Fed. R. Civ. P. 5 and served on all non-parties as provided for in Fed. R. Civ. P. 4.  *See* Fed. R. Civ. P. 25(a)(3).  Here, Mr. Schwartz's attorney properly served the Suggestion of Death on all parties by serving it on their attorneys of record pursuant to Fed. R. Civ. P. 5(b)(1).  However, without citing any rule or case with precedential value in support, Graham argues that the Suggestion of Death had to be served on Mr. Schwartz's legal

representative because that person is an appropriate non-party to this lawsuit. Even if Mr. Schwartz's legal representative could be considered a non-party to this lawsuit such that he or she had to also be served with the Suggestion of Death, Graham cannot now complain about an alleged defect in service on a non-party and use that as an excuse not to file a timely motion to substitute a party as required under Rule 25(a)(1). Indeed, other than to object to the magistrate judge's report and recommendation, Graham has taken no action since the Suggestion of Death was filed in October 2013 to substitute a party for Mr. Schwartz, either by naming a representative or opening an estate himself and asserting claims against it. Graham also argues that he was not required to move for substitution because he sued Mr. Schwartz in his firm's name, suggesting that any judgment entered against Mr. Schwartz would automatically transfer to his law partners. Graham has cited no authority for his excuse for not filing a motion for substitution of parties on this ground, and the Court can find none.

Accordingly, the magistrate judge's report and recommendation is due to be adopted and accepted. Accordingly, Graham's claims against Mr. Schwartz d/b/a Schwartz & McClure are due to be dismissed with prejudice and Mr. Schwartz d/b/a Schwartz & McClure is due to be dismissed with prejudice as a defendant from this action. The Court also notes that Mr. Schwartz's motion to dismiss, filed prior to his

death, raises many of the same arguments and defenses as does the joint motion to dimiss filed by Tasa Group, Mr. Beckert, and Mr. Seltzer.  In the alternative, and for the reasons stated herein, Mr. Schwartz's motion to dismiss is due to be granted and all claims against him dismissed even if he were not dismissed from this action pursuant to Fed. R. Civ. P. 25.

> B.   Tasa Group, Mr. Beckert, and Mr. Seltzer's Motion to Dismiss and Renewed Motions to Dismiss

> 1.   Standards of Review on a Motion to Dismiss

The defendants have raised arguments that dismissal is proper for lack of subject matter jurisdiction and, in the alternative, for failure to state a claim.  Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds. *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n. 5 (11th Cir. 2003). When defendants, such as here, raise a factual attack on subject matter jurisdiction, by relying on evidence outside the pleadings, this Court may consider extrinsic evidence and is not constrained to viewing the facts in the light most favorable to Graham. *Id.*

With regard to the defendants' alternative argument that Graham's complaint fails to state a claim for relief, Rule 8(a) of the Federal Rules of Civil Procedure requires a pleading to contain " a short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). " Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). Instead, " [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 678 (internal quotations omitted). *Iqbal* establishes a two-step process for evaluating a complaint. First, the Court must " begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Second, " [w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Factual allegations in a complaint need not be detailed, but they " must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

>2. Request for Dismissal Pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction

This Court must consider first the defendants' argument that it lacks subject matter jurisdiction to consider Graham's complaint. *See Belleri v. United States*, 712 F.3d 543, 547 (11th Cir. 2013) (" We may not consider the merits . . . unless and until

we are assured of our subject matter jurisdiction.")

    i. Dismissal Pursuant to the Compulsory Counterclaim
      Rule

  The defendants first assert that Graham's complaint is due to be dismissed pursuant to the compulsory counterclaim rule found in Rule 13(a) of the Federal Rules of Civil Procedure because Graham should have asserted all of his claims as counterclaims in the Pennsylvania action.  Pursuant to Rule 13(a), "[c]ompulsory counterclaims which are not brought are 'thereafter barred.'" *Nippon Credit Bank, Ltd. v. Matthews*, 291 F.3d 738, 755 (11th Cir. 2002), *abrogation on other grounds recognized in* 593 F.3d 1249, 1258 & n.7 (11th Cir. 2010) (quoting *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1 (1974)).  A counterclaim is compulsory if it "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."  Fed. R. Civ. P. 13(a).  "A determination of whether a counterclaim is compulsory is not discretionary; rather, such a determination is made as a matter of law."  *Republic Health Corp. v. Lifemark Hosps. of Fla, Inc.*, 755 F.2d 1453, 1454 (11th Cir. 1985).  To make a determination as to whether a claim "arises out of the transaction or occurrence," the Eleventh Circuit relies on the "logical relationship" test.  *Id.* at 1455.  A logical relationship exists "when the same operative

facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Id.* When a court concludes that a claim was a compulsory counterclaim in a previous action, the appropriate remedy is dismissal of the claim. *See Cleckner v. Republic Van and Storage Co.*, 556 F.2d 766, 769 n.3 (5th Cir. 1977)).

The defendants' reliance on the federal compulsory counterclaim rule is misplaced. This is because Supreme Court and Eleventh Circuit precedent appears to indicate that Pennsylvania law regarding compulsory counterclaims, and not the federal compulsory counterclaim rule, controls in this situation. There is no question that when the first suit is brought in state court and the second suit is brought in federal court based on diversity, the failure to bring a compulsory counterclaim is a question of state law. *See Montgomery Ward Development Corp. v. Juster*, 932 F. 2d 1378, 1380 (11th Cir. 1991) (applying Florida's compulsory counterclaim rule). However, Graham has invoked the jurisdiction of this Court based on a federal question, and not on the diversity of citizenship of the parties—indeed, complete diversity is lacking, as Graham and Mr. Schwartz are both Alabama residents. Nonetheless, in *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486 (11th Cir. 1985), which the Eleventh Circuit relied on in *Montgomery Ward* to state the rule as

recounted above, the Eleventh Circuit stated that regardless of whether the federal

case is based on diversity or federal question jurisdiction, the state's law of *res judicata*

applies:

> Where the first suit is brought in state court and the second suit is
> brought in federal court based on diversity, state law of *res judicata* is to
> be applied. *Commercial Box & Lumber v. Uniroyal*, 623 F.2d 371, 373 (5th
> Cir. 1980); *Cleckner v. Republican Van & Storage Co.*, 556 F.2d 766, 768
> (5th Cir. 1977). Similarly, when a federal court exercises federal question
> jurisdiction and is asked to give *res judicata* effect to a state court
> judgment, it must apply the *res judicata* principles of the law of the state
> whose decision is set up as a bar to further litigation.  *Hernandez v. City
> of Lafayette*, 699 F.2d 734, 736 (5th Cir. 1983) (citing *ED Systems Corp.
> v. Southwestern Bell Telephone Co.*, 674 F.2d 453, 457 (5th Cir. 1982)). *See
> Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105
> S.Ct. 1327, 84 L. Ed.2d 274 (1985). *See also St. John v. Wisconsin
> Employment Relations Board*, 340 U.S. 411, 71 S.Ct. 375, 95 L.Ed. 386
> (1951); *Rollins v. Dwyer*, 666 F.2d 141 (5th Cir. 1982).

*Amey, Inc.*, 758 F.2d at 1509.  Although *Amey, Inc.*, and the cases on which it relied,

discussed the doctrine of *res judicata* and not the federal compulsory counterclaim rule

specifically, the former Fifth Circuit has stated, "Although the bar resulting from

failure to bring a compulsory counterclaim is not identical to the bar of *res judicata*, our

court has held that the 'principles of *res judicata*' govern."  *Cleckner*, 556 F.2d at 769

(holding that Florida's compulsory counterclaim rule and not the federal rule applies

to decide whether claims brought in a federal diversity case are barred as non-asserted

compulsory counterclaims) (quoting *Dupuy-Busching General Agency v. Ambassador*

*Ins.*, 524 F.2d 1275, 1277 (5th Cir. 1977)).[7]

Additionally, in *Marrese*, another case relied on in *Amey, Inc.*, *supra*, the Supreme Court explained that the preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings " shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the court of such State . . . from which they are taken." 470 U.S. at 380 (quoting 28 U.S.C. § 1738). The issue in *Marrese* was whether a state court judgment may have preclusive effect on a federal antitrust claim that could not have been raised in the state proceeding. *Id.* at 379. The Supreme Court held that even though the antitrust claim was within the exclusive jurisdiction of the federal courts, the court of appeals erred by suggesting that a federal court should determine the preclusive effect of a state court judgment without regard to the law of the State in which the judgment was rendered. *Id.* The Court stated that the full faith and credit statute " does not allow federal courts to employ their own rules of *res judicata* in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

court to accept the rules chosen by the State from which the judgment is taken." *Id.*

at 379-80 (quoting *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481-82

(1982)).  The Court thus instructed courts to "look first to state preclusion law in

determining the preclusive effects of a state court judgment," *id.* at 381, even though

*Marrese* involved a federal question, not diversity of citizenship.

Before *Marrese*, the former Fifth Circuit had to decide in *Chapman v. Aetna

Finance Co.*, 615 F.2d 361 (5th Cir. 1980),[8] whether the "petitioner's Truth in Lending

claims were properly dismissed on account of their non-assertion as compulsory

counterclaims in previous state foreclosure proceedings." *Id.* at 362.  The court

recognized that the petitioner's Truth in Lending claims arose under federal law and

that its analysis would thus have no application to diversity cases, citing *Cleckner*, 556

F.2d 766.  *Chapman*, 615 F.2d at 363 n.6.  The court held that the full faith and credit

statute did not compel dismissal of the federal actions because Georgia's compulsory

counterclaim rule was essentially procedural and more akin to a statute of limitations,

which like other "common and statutory law" would "not ordinarily be entitled to full

faith and credit in foreign jurisdictions." *Id.* at 363.  However, the court went on to

decide that the principles of comity compelled operation of the Georgia compulsory

_____

[8] *See* footnote 5, *supra.*

counterclaim rule because it was very similar to Fed. R. Civ. P. 13(a) in both purpose and scope. *Id.* at 364. Accordingly, the court held that Georgia's compulsory counterclaim rule operated to preclude adjudication of Truth in Lending claims that were not asserted in Georgia state court suits on the underlying debt. *Id.* However, the Court held that its decision was prospective only. *Id.*

Based on the reasoning in these cases, the Court is of the opinion that Pennsylvania law regarding compulsory counterclaims, and not federal Rule 13(a), applies, whether it is because the full faith and credit statute compels it, as it did to give credit to the state law of *res judicata* in *Marrese*, or whether it is for reasons of comity to the state law, as in *Chapman*. The conclusion that Pennsylvania law applies is fatal for the defendants' argument because Pennsylvania does not have a compulsory counterclaim rule; all counterclaims are permissive. *See Hunsicker v. Brearman*, 586 A.2d 1387, 1389 (Pa. Super. Ct. 1991) ("Under the Pennsylvania Rules of Civil Procedure, a defendant is not required to file a counterclaim; rather, the rule is permissive.") (citing Pa. R. Civ. P. 1031). Thus, because Graham was not required to assert his claims in the Pennsylvania action or lose them forever, the defendants' contention that they are now barred as non-asserted compulsory counterclaims fails. Indeed, the former Fifth Circuit's holding in *Chapman* compels this conclusion. As

the court explained there:

> It is now settled that, had respondents originally been able to bring foreclosure proceedings in the federal court system, petitioners' Truth-in-Lending claims would have been compulsory counterclaims under Fed. R. Civ. P. 13(a). *See Plant v. Blazer Financial Services, Inc.*, 598 F.2d 1357 (5th Cir. 1979). As earlier indicated, the same rule obtains under [Georgia's compulsory counterclaim rule,] Ga. Code Ann. § 81A-113(a) (Harrison 1978). *See Aycock v. Household Finance Corp.*, 142 Ga.App. 207, 235 S.E.2d 578 (1977), *cert. dismissed*, 240 Ga. 570, 241 S.E.2d 835 (1978). Manifestly, therefore, the instant lawsuits derogate the policies of both Georgia and this Circuit. We decline to sanction the very repetitious litigation that both our and Georgia's compulsory counterclaim rules were intended to prevent.

615 F.2d at 361.  Unlike Georgia, Pennsylvania does not have the same policy barring compulsory counterclaims from being asserted for the first time in a later suit.  Thus the reasoning in *Chapman* indicates that Graham's claims are not barred under the compulsory counterclaim rule.

ii.   Dismissal Pursuant to the *Rooker-Feldman* Doctrine

Although their compulsory counterclaim argument fails, the defendants also asserted that this Court lacks subject matter jurisdiction over any of Graham's claims by operation of the *Rooker-Feldman* doctrine.  The *Rooker-Feldman* doctrine recognizes that the federal trial courts lack appellate jurisdiction to review a state court's judicial proceedings. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) ("[A] United States District Court has no authority to review final judgments

of a state court in judicial proceedings." ); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-416 (1923). However, this doctrine has also been narrowly construed to be " confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). The *Rooker-Feldman* doctrine applies to bar all of the claims in the instant case because (1) Graham is a " state-court loser" in the Pennsylvania action; (2) the Pennsylvania judgment was rendered before the instant lawsuit was filed; and (3) Graham now complains of injuries caused by the judgment in the Pennsylvania action. *See id.*

First, Graham is a " state-court loser" in the Pennsylvania action. The default judgment taken against Graham counts for purposes of *Rooker-Feldman*. *See MSK EyEs Ltd. v. Wells Fargo Bank, Nat'l Ass'n*, 546 F.3d 533, 539 (8th Cir. 2008) (" The fact that a judgment was entered on a party's default does not alter the applicability of the *Rooker–Feldman* doctrine." ); *Ballyhighlands, Ltd. v. Bruns*, 182 F.3d 898, *2 (2nd Cir. 1999) (" *Rooker-Feldman* applies to default judgments just as it does to other types of judgments." ); cf. *Jones v. Commonwealth Land Title Ins. Co.*, 459 F. App'x

808, 810 (11th Cir. 2012) (rejecting argument that a motion for default summary judgment was a final judgment for purposes of *Rooker–Feldman* because "there is nothing in the record that indicates that there was a final or conclusive judgment on the merits in Jones's state court case, and merely filing a default summary judgment motion does not result in the entry of a default judgment").

Second, there is no dispute that the Pennsylvania court rendered judgment before these federal proceedings commenced. The Pennsylvania court entered judgment on May 2, 2011.  The instant lawsuit was not filed until nearly two years later, on April 23, 2013.  However, the procedural history of this case requires this Court to make some observations about the finality of the Pennsylvania action.  In *Nicholson v. Shafe*, 558 F.3d 1266 (11th Cir.2009), the Eleventh Circuit was called on to decide when a state court judgment becomes final for *Rooker-Feldman* purposes, because in that case, at the time of the filing of the federal action, the state proceeding in the Georgia courts had not ended but remained pending on appeal.  *Id.* at 1275-76. The court held that "state proceedings have not ended for purposes of *Rooker-Feldman* when an appeal from the state court judgment remains pending at the time the plaintiff commences the federal action that complains of injuries caused by the state court judgment and invites review and rejection of that judgment."  *Id.* at 1279.

At the time that Graham filed this lawsuit in April 2013, there was no question that the state proceedings had ended because Graham had no appeal pending from the Pennsylvania judgment.  Indeed, Graham did not represent to this Court that he had any appeal pending.  However, Mr. Schwartz filed a supplement to his motion to dismiss that noted that Tasa Group had filed a motion to hold Graham in contempt of court in the Alabama domesticated judgment action, to which Graham had filed an opposition in which he argued that the Alabama case should be stayed because he had filed a motion to reopen the Pennsylvania case and set aside the default judgment.  *See* doc. 8 at 2.  The magistrate judge previously assigned to the case made inquiries of the parties into the matter, and it was revealed that Graham had not actually filed any such motion to reopen.  *See* Plaintiff's status report, doc. 26 (discussing that he attempted to file a motion to reopen, but that it was returned to him along with the filing fee, and that he was told that he needs to file a petition to appeal the judgment outside of the statutory deadline with Pennsylvania's Court of Commons Pleas, but that "the plaintiff has no guarantee that the Court of Common Pleas will hear his case").  Nonetheless, the magistrate judge determined that Graham still had a course of action available to him to challenge the Pennsylvania judgment against him, and opined that if Graham pursued that course of action, the Pennsylvania judgment would not be

"final" for *Rooker-Feldman* purposes. *See* Magistrate Judge's Order, doc. 33. The magistrate judge informed Graham that, pursuant to Rule 1009 of the Pennsylvania Rules of Civil Procedure Governing Actions and Proceedings Before Magisterial District Judges, he could file a "praecipe for writ of certiorari" with the prothonotary of the Court of Common Pleas, claiming that the judgment should be set aside because the magisterial court lacked jurisdiction over him. *See id.* According to the rule cited by the magistrate judge, Graham still had this remedy available because a party challenging jurisdiction could file such an appeal at any time after the judgment is entered. *See id.; see also* Pa. R. C. P. M. D. J. No. 1009. The magistrate judge gave Graham 30 days to report back to the court whether he pursued this remedy and stated that if he did not pursue it, the Pennsylvania judgment would be considered final for *Rooker-Feldman* purposes. *See* doc. 33.

Graham did not file the appeal within the time allotted by the magistrate judge, even though the magistrate judge gave him an extension of time in which to do so. Instead, Graham filed a "Petition to Appeal Nunc Pro Tunc" to the Court of Common Pleas outside of the period of time designated by the magistrate judge. *See* Status Report, doc. 44. At this point the defendants renewed their motion to dismiss, arguing that Graham's action should be dismissed for failure to comply with the

magistrate judge's order. (Doc. 39.) The new magistrate judge to which this case was then assigned held a motion hearing in which the parties informed her that Pennsylvania's Court of Common Pleas had scheduled a hearing on Graham's Petition to Appeal Nunc Pro Tunc as well as on a motion that Tasa Group filed seeking to quash Graham's petition. *See* text order, doc. 50. The magistrate judge encouraged the parties to attend the hearing and report back on any rulings entered. *See id.* On July 15, 2014, the Pennsylvania Court of Common Pleas quashed Graham's petition in its entirety, and the defendants so informed this Court. *See* Status Report, doc. 54. On July 31, 2014, Graham notified the court that he "is filing" an appeal of the Pennsylvania court's order, asserting, not surprisingly, that the decision was not yet final for *Rooker-Feldman* purposes. (Doc. 55.) On August 5, 2014, the defendants again renewed their motion to dismiss, arguing that Graham's complaint is due to be dismissed for failure to state a claim without regard to what happens in Pennsylvania. (Doc. 56.) On August 22, 2014, Graham filed a status report in which he again stated that he "is filing an appeal of the Pennsylvania State Court's order . . . ." (Doc. 57.) In the ensuing six months before this case was reassigned to the undersigned judge, neither party has provided the Court with any indication of whether Graham actually appealed the Court of Common Pleas' order or the disposition, if any, of that appeal.

All this is to say that this Court will not allow the procedural history of this case to muddy the waters made clear by the Eleventh Circuit's pronouncement that state proceedings have ended for *Rooker-Feldman* purposes when there is no appeal pending at the time that the federal lawsuit is filed. *See Nicholson*, 558 F.3d at 1275-76. The Pennsylvania judgment was final when Graham filed this action. Graham waited three years after judgment was entered against him in Pennsylvania before filing this case, doing nothing to properly appeal the Pennsylvania default judgment during that time. The Eleventh Circuit held in *Powell v. Powell*, 80 F.3d 464 (11th Cir. 1996), that "[a] litigant may not escape application of the [*Rooker-Feldman*] doctrine by merely electing not to appeal an adverse state trial court judgment." *Id.* at 467. In *Nicholson*, the court stated that "*Powell* stands for the proposition that the *Rooker-Feldman* doctrine applies where the state court loser declines to appeal an adverse state trial court judgment . . . ." 558 F.3d at 1276. The court in *Nicholson* also discussed the First Circuit's case of *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17 (1st Cir. 2005), where that court determined that state proceedings have "ended" "if the state action has reached a point where neither party seeks further action." *Nicholson*, 558 F.3d at 1275 (quoting *Federacion*, 410 F.3d at 24-25). The Eleventh Circuit stated that its decision in *Powell* was in line with the

reasoning in *Federacion*.   *Id.* at 1276.   Although Graham, acting on the previous magistrate judge's encouragement, filed an out-of-time appeal four years after the default judgment was entered, the Pennsylvania court has now confirmed that any appeal in Pennsylvania is time-barred.   Graham has twice stated that he "is filing an appeal" of that order, but has provided nothing by way of proof of such a filing.   This Court finds that the requirement that the state proceedings be over at the time the plaintiff files the federal lawsuit is more than satisfied in this case.

Finally, Graham complains to this Court of injuries caused by the default judgment entered against him in Pennsylvania. On this point, the Eleventh Circuit has instructed courts to determine whether the plaintiff's claims are "inextricably intertwined" with the state court judgment. *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (quoting *Feldman*, 460 U.S. at 482 n.16).   "A claim is inextricably intertwined if it would effectively nullify the state court judgment or it succeeds only to the extent that the state court wrongly decided the issues." *Id.* Because Graham complains he did not owe the underlying debt and Tasa Group engaged in a conspiracy to commit fraud and theft in connection with the underlying debt, his claims fall "squarely within these strictures." *Franklin v. Dean*, 2013 WL 1867105 (M.D. Ala. May 03, 2013).   Although not binding on this Court, *Franklin* is directly

on point and persuasive.  In that case, the plaintiff—who previously had a default judgment entered against her in state court on the underlying debt—filed suit in federal district court alleging violations of the FDCPA and further alleged that she did not owe the underlying debt made the subject of the allegedly improper collection activities. *Id.* at *2, *4. The district court held, " To the extent that [the plaintiff] asks this court to undo the state district court's default judgment against her and to decide whether she owed the underlying debt, the court lacks subject matter jurisdiction to do so under the *Rooker–Feldman* doctrine." *Id.* at *8.  Here, as in *Franklin*, Graham asks the Court to conclude that the debt is not properly owed.  Specifically, he asks the Court to conclude that (1) Tasa Group fraudulently entered into an agreement (doc. 1 at ¶¶ 22-32); (2) Tasa Group engaged in theft when it took money from him without providing what he believes he was entitled to in return (*id.* at ¶¶ 33-37); (3) Tasa Group violated the FDCPA by attempting to collect on a debt that is not properly owed (*id.* at ¶¶ 45-47); and (4) Tasa Group violated the RICO statute by engaging in a scheme to fraudulently enter into an agreement relating to expert witness services and engaging in a scheme to collect money not lawfully owed (*id.* at ¶¶ 48-60).

Graham's federal RICO and FDCPA claims are " inextricably intertwined" with the judgment entered by the Pennsylvania court, i.e., that Graham owes Tasa

Group the underlying debt, in the sense that they are premised on the state court having ruled erroneously. In other words, this Court can not decide in Graham's favor on these federal claims unless it decides that the Pennsylvania court erred in its judgment. Moreover, if the Pennsylvania court had not ruled against Graham, the portion of Graham's RICO and FDCPA claims premised on Tasa Group's attempts to collect the debt based on the default judgment would cease to exist. Thus, again, the only way this Court could find that these attempts to collect the debt could have injured Graham is by finding that the state court ruled erroneously. As such, this Court is without subject matter jurisdiction to entertain Graham's two federal claims. *See Franklin v. Arbor Station, LLC*, 549 F. App'x 831, 833 (11th Cir. 2013) (in case where apartment complex brought an unlawful detainer action and won a judgment of possession against plaintiff in state court and plaintiff then brought FDCPA claims in federal court, affirming district court's dismissal of plaintiff's FDCPA claims on *Rooker-Feldman* grounds because ruling in plaintiff's favor on any of those claims would necessitate a finding that the state court's decision was erroneous); *Figueroa v. Merscorp, Inc.*, 766 F. Supp. 2d 1305, 1316-27 (S.D. Fla. 2011) (dismissing a RICO claim under *Rooker–Feldman*, where plaintiff sought to attack a state foreclosure judgment, because the RICO claims were inextricably intertwined with that

foreclosure judgment), *affirmed* 477 F. App'x 558 (11th Cir. 2012).

Moreover, Graham's state law fraud and theft of property claims are also "inextricably intertwined" with the Pennsylvania judgment because they challenge the propriety of the underlying debt and the judgment entered against Graham. In any event, because this Court does not have jurisdiction to consider the claims Graham makes based on federal law, it has no jurisdiction to consider the remaining state law claims of theft of property, fraud, and negligent and wanton hiring, training and retention. *See Franklin*, 549 F. App'x at 833 ("Because the district court had no jurisdiction [pursuant to the *Rooker-Feldman* doctrine] to consider the claims Franklin made based on federal law, it had no jurisdiction to consider the remaining state-law claims."), citing *Scarfo v. Ginsberg*, 175 F.3d 957, 962 (11th Cir. 1999) ("[O]nce the district court determines that subject matter jurisdiction over a plaintiff's federal claims does not exist, courts must dismiss a plaintiff's state law claims.").

Graham asserts several arguments in opposition to the application of the *Rooker-Feldman* doctrine that must be addressed. Graham first argues that he could not have raised his claims in the Pennsylvania court because it only has jurisdiction over cases involving less than $12,000.00, citing 42 Pa. C.S.A. § 1515. There is indeed a limitation on the *Rooker-Feldman* doctrine when the plaintiff had no "reasonable

opportunity to raise his federal claim in state proceedings." *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996).  However, Graham's argument is misplaced because Rule 315 of Pennsylvania's magisterial district court rules expressly contemplates the situation in which Graham found himself in Pennsylvania. That Rule permits a defendant who has lost in a magisterial district court and who intends to assert a claim against the plaintiff not within the magisterial district judge's jurisdiction to commence an action in the Court of Common Pleas against the plaintiff. *See* Official Note to Pa. R. C. P. M. D. J. No. 315.  There are no limits on the jurisdiction of Pennsylvania's Courts of Common Pleas.  *See* 42 Pa. C.S.A. § 931 (stating that the Courts of Common Pleas have unlimited original jurisdiction); *Itri v. Equibank, N.A.*, 464 A.2d 1336, 1342 (Pa. Super. Ct. 1983) (holding that FDCPA claims may be brought in the Court of Common Pleas).  Thus, Graham could have appealed the default judgment, and in the very same pleading, asserted these claims against the defendants.

Second, Graham argues that he was not properly served with notice of the hearing in the Pennsylvania action where the default judgment was taken against him, so the judgment should be rendered void and have no preclusive effect.  The facts belie this assertion.  Tasa Group, through its counsel, mailed to Graham a Notice of

Civil Action Hearing on April 4, 2011, nearly one month prior to the hearing, set for May 2, 2011.  Graham says that the mail was placed in the wrong mailbox within his office building, but he concedes that the Notice was mailed to 2107 5th Avenue North, Birmingham, Alabama 35203, which is the same address listed for Graham on www.martindale.com and www.lawyers.com.[9]  *See* Graham's response brief, doc. 19 at 26.  This method of service is consistent with the Pennsylvania Rules.  *See* Pa. R. Civ. P. 440(a)(2)(i) (providing that hearing notices may be mailed to a party's place of business).  Service was complete upon mailing.  *See* Pa. R. Civ. P. 440(b) ("Service by mail of legal papers other than original process is complete upon mailing.").  Further, Graham concedes that he had *actual* knowledge of the hearing several days before it occurred.  *See* Graham's response brief, doc. 19 at 26 (". . . the defendant received the notice of the case and hearing at 4:00 p.m. on the Friday evening before the matter was set for hearing on the following Monday morning.  The defendant did not have time to properly respon[d] to the notice, or prepare to travel from Alabama to the hearing.").  Graham further concedes that he spoke to the Pennsylvania court and learned of the default judgment within a day of the entry of the default judgment.

---

[9] *See* http://www.martindale.com/Roderick-D-Graham/26125-lawyer.htm; http://www.lawyers.com/birmingham/alabama/Roderick-D-Graham-26125-a.

*See id.* (" When the defendant was able to get someone on the phone on the following Tuesday, he was told that it was too late." ).  If Graham had an argument that service was improper, he had ample time to ask the court to set aside the default judgment or appeal the judgment to the Court of Common Pleas.  Magisterial District Court Rule 1002(a) provides thirty days for a party to appeal from an order of the magisterial district court. Pa. R. C. P. M. D. J. No. 1002(a).   That same Rule provides for a presumably unlimited time to appeal the decision with leave of the court " for good cause shown." *Id*.  In short, this is not the appropriate forum for Graham to assert that he was never properly served in the Pennsylvania action.

Third, Graham argues that the Pennsylvania court did not have personal jurisdiction over him, so the judgment is void and has no preclusive effect.   This argument is meritless.  Graham concedes he initiated contact with a Pennsylvania corporation (doc. 1 at ¶ 10), entered into a contract with the Pennsylvania corporation (Graham's response brief, doc. 19 at 29), made a payment to the Pennsylvania corporation (doc. 1 at ¶ 15), and then engaged in a negotiation with the Pennsylvania corporation about the proper amount owed to the corporation (doc. 1 at ¶ 20).  Those contacts are more than sufficient to establish specific jurisdiction over Graham in Pennsylvania. *See Gen. Motors Acceptance Corp. v. Keller*, 737 A.2d 279, 282 (Pa. Super.

Ct. 1999) (holding that a party contracting with a resident of Pennsylvania despite not physically signing the contract in Pennsylvania, was sufficient to determine purposeful availment and vest Pennsylvania with jurisdiction given that the party mailed the contract to Pennsylvania and directed payments to Pennsylvania).

Given that the *Rooker-Feldman* elements have been established, this Court is without jurisdiction to entertain Plaintiff's claims, *see* Fed R. Civ. P. 12(b)(1), and the defendants' motions to dismiss are due to be granted and this case dismissed.[10] However, in an abundance of caution, the Court will discuss why the federal claims in Graham's complaint fail to state claims upon which relief may be granted in any event.

---

[10]  The Court notes that Mr. Schwartz argued in his separately-filed motion to dismiss that Graham's claims are also barred by the doctrines of *res judicata* and collateral estoppel.  The Court notes that neither doctrine applies to bar Graham's litigation in this forum.  First, Pennsylvania law governs for purposes of this Court's *res judicata* or collateral estoppel analysis. *See Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011) ("In considering whether to give preclusive effect to state-court judgments under *res judicata* or collateral estoppel, the federal court applies the rendering state's law of preclusion.").  In Pennsylvania, "[t]echnical *res judicata* provides that where a final judgment on the merits exists, a future lawsuit on the same cause of action is precluded.  Collateral estoppel acts to foreclose litigation in a subsequent action where issues of law or fact were actually litigated and necessary to a previous final judgment." *J.S. v. Bethlehem Area Sch. Dist.*, 794 A.2d 936, 939 (Pa. 2002).  In Pennsylvania, a default judgment is not entitled to the preclusive effect of collateral estoppel because there is no decision on the merits in the first proceeding. *Id.* (citing *McGill v. Southwark Realty Co.*, 828 A.2d 430, 435 (Pa. 2003).  Similarly, in Pennsylvania, "[a] default judgment is *res judicata* [only] with regard to transactions occurring prior to the entry of judgment." *McGill*, 828 A.2d at 435.

3.    Request for Dismissal of Graham's Federal Claims Pursuant
       to Rule 12(b)(6) for Failure to State a Claim

i.    The FDCPA Claim

The defendants argue that should this Court find that it has jurisdiction,

Graham's FDCPA claim is due to be dismissed because the debt at issue is not a

consumer debt and, therefore, falls outside the scope of the statute.   This Court

agrees.  The applicability of the FDCPA presupposes the existence of a "debt" as

defined by the Act.  *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir.

1998).   The FDCPA defines "debt" as "any obligation or alleged obligation of a

consumer to pay money arising out of a transaction in which the money, property,

insurance, or services which are the subject of the transaction are primarily for

*personal, family, or household purposes*, whether or not such obligation has been reduced

to judgment." 15 U.S.C.A. § 1692a(5) (emphasis added).   In other words, the debt

must be a consumer debt.  *See Heintz v. Jenkins*, 514 U.S. 291, 293 (1995) (explaining

that the FDCPA "limits 'debt' to consumer debt . . . .") ; *Hawthorne*, 140 F.3d at 1371-

72 & n.2 ("[T]he statutory language further limits application of the FDCPA to debts

arising from *consumer* transactions.") (citing the Senate Report on the FDCPA that

defines the scope of the act as applying "only to debts *contracted by consumers* for

personal, family, or household purposes; it has no application to the collection of

commercial accounts," S. Rep. 95-382 (1977)).

The Eleventh Circuit has indicated that debts arising out of commercial or business transactions fall outside the bounds of the statute. For example, in *Oppenheim v. I.C. System, Inc.*, 627 F.3d 833 (11th Cir. 2010), the defendant argued that the debt the plaintiff owed to PayPal did not satisfy the FDCPA's requirement that the debt be for personal, family, or household purposes because the transaction at issue served a commercial purpose. *Id.* at 838. The court held that the defendant waived the issue by not raising it below, but also stated:

> In any event, we are unpersuaded that the sale of Oppenheim's *personal* computer—the funds from which were ultimately transferred to Oppenheim's *personal* bank account—violates the "personal, family, or household purposes" requirement. Oppenheim *does not run a business* and specifically registered his PayPal account as a "personal account," which the User Agreement defines as an account "used for non-business purposes and used primarily for personal, family, or household purposes." PayPal User Agreement ¶ 15.aj.

*Id.* at 838-39 (emphasis supplied). In contrast, in *Lingo v. City of Albany Department of Community & Economic Development*, 195 F. App'x 891, 893 (11th Cir. 2006), the court held that the loan the plaintiff obtained to help him develop his pest control business was for business, and not for personal, family, or household purposes, so the district court properly granted summary judgment on the plaintiff's FDCPA claim. *See also First Gibraltar Bank, FSB v. Smith*, 62 F.3d 133, 136 (5th Cir. 1995)

(partnership's loan to purchase real estate was commercial, not for personal or household purposes, and thus outside of the scope of the FDCPA).

It is clear to this Court that Graham's debt to Tasa Group arose out of a business transaction.   Graham concedes he contracted with Tasa Group for professional expert services, not for personal edification.   *See* Doc. 1 at ¶¶ 9-21; Graham's response brief, doc. 12 at 14 ("The plaintiff entered into a contract for an initial report and designation of an expert.").   There was no personal, family, or household purpose in engaging the services of Tasa Group.  Accordingly, Graham's FDCPA claim is due to be dismissed because the complaint does not allege that Graham has been the object of collection activity arising from consumer debt—i.e., an obligation arising from a transaction "primarily for personal, family, or household purposes." 15 U.S.C.A. § 1692a(5).

## ii.    The RICO Claim

This Court agrees with the defendants that, should it be determined that this Court in fact had jurisdiction over this action, Graham's complaint does not state a claim under RICO because Graham provides virtually no facts from which this Court could determine that any RICO claim is plausible.  Graham's RICO allegations are almost entirely conclusory statements, and his allegations that each defendant agreed

to a conspiracy to commit RICO violations are merely formulaic recitations of the elements of a RICO claim.

As an initial matter, Graham has not alleged the defendants violated any of the substantive provisions of RICO.  Rather, he makes clear that he is prosecuting his claim under 18 U.S.C. § 1962(d), the RICO provision which governs conspiracy claims. *See* Doc. 1 at ¶ 49 ("This count is brought by the plaintiff . . . alleging a cause of action under 18 U.S.C. § 1962(d).").  Even if Graham sought to pursue a claim under section 1962(a)-(c), the substantive provisions of RICO, he would be precluded from doing so. Each of the substantive provisions of RICO requires Graham to establish either "racketeering activity," which is not alleged, or the existence of "an unlawful debt." *See* 18 U.S.C. §§ 1962(a)–(c). As explained above, asking this Court to determine that the underlying debt was unlawful violates the *Rooker-Feldman* doctrine, because the Court would be nullifying a previous state court's decision.  As such, Graham cannot maintain a cause of action under RICO's substantive provisions.

In order to state a RICO conspiracy claim, a plaintiff must allege the defendants (1) agreed to the overall objective of the conspiracy, or (2) agreed to commit at least two predicate acts. *ADA v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) (citing *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950 (11th Cir.

1997)).  Those allegations must be analyzed under the pleading standards articulated by the United States Supreme Court in *Twombly* and *Iqbal*. *Id.* at 1286. The allegations must be more than "formulaic recitations" of the RICO elements. *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. 662.  Instead, the complaint must allege factual allegations sufficient to "state a claim to relief" under the RICO statute. *Twombly*, 550 U.S. 544 at 570.

In *Cigna Corp.*, the Eleventh Circuit found that mere allegations the defendants had agreed to the overall objective of a conspiracy were "formulaic recitations" insufficient under the pleading standard required by *Twombly* and *Iqbal*. 605 F.3d at 1293–94. Thus, the court eliminated those conclusory allegations. *Id.* at 1294. The court then turned to the remaining factual allegations and determined that the plaintiff's allegations of collective or parallel conduct were insufficient to give rise to an inference of conspiracy. *Id.* The court noted "allegations of parallel conduct, accompanied by nothing more than a bare assertion of a conspiracy, do not plausibly suggest a conspiracy . . . [and] 'without that further circumstance pointing to a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory.'" *Id.* at 1294–95 (citing *Twombly*, 550 U.S. at 557). Without a "plausibly-alleged 'meeting of the minds,' [such allegations] fail to 'nudge . . . claims

across the line from conceivable to plausible.' " *Id.* at 1296 (quoting *Twombly*, 550 U.S. at 570).

Like the plaintiff in *Cigna Corp.*, Graham's RICO allegations are entirely conclusory statements.  He first states that all of the defendants are "persons" and "enterprises" as those terms are defined by the RICO statute, and states that the defendants were engaged in interstate commerce as required by the statute.  *See* doc. 1 at ¶¶ 50-54.  Then, his allegation that each defendant agreed to RICO violations is merely a formulaic recitations of the elements of a RICO claim.  *See* Doc. 1 at ¶ 56 (" [E]ach of the RICO Defendants agreed to the Theft by Trick and Fraudulent Expert Witness Scheme, and also, to further perpetrate it through the three RICO enterprises, Law Offices of David Seltzer, Tasa Group, Inc. and Richard Beckett." ). Under *Twombly* and *Iqbal*, this statement is not entitled to an assumption of veracity and must be eliminated from the Court's analysis. Once the conclusory allegations have been stricken from the analysis, the few remaining allegations fail to meet the requisite pleading standard under *Twombly* and *Iqbal*.  Like the allegations in *Cigna Corp.*, Graham's allegations of parallel or collective conduct in the complaint are accompanied only by a bare assertion of a conspiracy.  Graham merely states:

> All of the USPS mailings and the numerous telephone calls, faxed communications, e-mails, bank checks and internet postings were made

in furtherance of the Fraudulent Expert Witness Scheme and the subsequent scheme to collect money not owed the defendants. Therefore, all of these communications were made in violation of the mail and wire fraud statutes.   The plaintiffs were defrauded by one or more of these mails and wires.  This pattern of mails, bank and interstate communications occurred over a period of 27 months from the date the Fraudulent Expert Witness Scheme began when TASA Group, Inc. [sic] In carryout [sic] the Fraudulent Expert Witness Scheme, the defendant entered into a contract to do business in the State of Alabama in violation of Alabama law, because the defendant did not have a certificate to do business in the state of Alabama. The Fraudulent Expert Witness Scheme was furthered with the hiring of the Law Offices of David Seltzer to collects monies from the defendant that was not owed to TASA Group, Inc. The Fraudulent Expert Witness Scheme victimized other persons in addition to the plaintiffs.

(Doc. 1 at ¶ 55.) These allegations of collective conduct are insufficient to give rise to a plausible inference of conspiracy as required by *Twombly/Iqbal*.  Thus, assuming the Court has jurisdiction, the RICO claim would be due to be dismissed.

>   **4.   Request for Dismissal of Graham's State Law Claims Pursuant to Rule 12(b)(6) for Failure to State a Claim**

The defendants argue that, assuming this Court has jurisdiction to consider any claims in this lawsuit, this Court should decline to exercise supplemental jurisdiction over Graham's state law claims. 28 U.S.C. § 1367(c)(3) provides " the district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction."  Assuming solely for argument that the Court has jurisdiction over this

action, the RICO and FDCPA claims against the defendants are due to be dismissed for the reasons stated above, leaving only Graham's state law claims.  Furthering the aim of 28 U.S.C.A. § 1367(c)(3), the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (citing *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984).  Accordingly, assuming this action is not barred by the *Rooker-Feldman* doctrine, this Court declines to exercise supplemental jurisdiction over Graham's state law claims of fraud, theft of property, and negligent and wanton hiring because the federal claims are due to be dismissed.[11]

### C.    Graham's Motion to Amend his Complaint

At the end of his opposition to Mr. Schwartz's motion to dismiss, Graham sought leave to amend his complaint in accordance with Rule 15 of the Federal Rules of Civil Procedure.  Graham has nowhere given notice of why he wants to amend.

Once the time period for amending a pleading as of right has expired,

---

[11] The Court also declines to exercise supplemental jurisdiction over Graham's state law claims for injunctive relief.  Counts VI, VII, and VIII in the complaint seek a temporary restraining order, a preliminary injunction, and a permanent injunction.  *See* Doc. 1 p. 21-23 ¶¶ 61-71.  No federal statute is cited as giving this Court original jurisdiction to consider these claims. Accordingly, it appears that the basis for jurisdiction for these claims is the Court's supplemental jurisdiction to consider state law claims in conjunction with the Court's original jurisdiction over Federal statutory claims.  *See* 28 U.S.C. § 1367(a).

Rule 15(a) of the Federal Rules of Civil Procedure , provides amendment "only by leave of court or by written consent of the adverse party." The decision whether to grant leave to amend a complaint is within the sole discretion of the district court. Rule 15(a), however, limits the court's discretion by mandating that "leave shall be freely given when justice so requires." *See Halliburton & Assoc. v. Henderson, Few & Co.*, 774 F.2d 441 (11th Cir. 1985). There must be a substantial reason to deny a motion to amend. *Id.* Substantial reasons justifying a denial include "undue delay, bad faith, dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).

*Laurie v. Alabama Court of Criminal Appeals*, 256 F.3d 1266, 1274 (11th Cir. 2001).

When challenges to the sufficiency of a plaintiff's pleading have been raised pursuant to Fed. R. Civ. P. 12(b)(6), this Court would ordinarily allow an amendment. However, because this Court lacks subject matter jurisdiction over Graham's claims pursuant to the *Rooker-Feldman* doctrine, there exists a substantial reason to deny Graham's motion to amend; that is, that any amendment would be futile. Indeed, the parties have engaged in extensive briefing on these issues, and there is nothing that Graham could add to his complaint—and that is not already before this Court in briefs—that would change the fact that the *Rooker-Feldman* doctrine bars Graham's claims from proceeding in this Court. Accordingly, Graham's motion to amend his complaint is due to be denied.

    D.    Graham's Motion to Strike Exhibit D Attached to Tasa Group, Mr.

Seltzer, and Mr. Beckert's Motion to Dismiss[12]

Plaintiff moves the court to strike Exhibit D to Tasa Group's Motion to Dismiss

(Doc. 32.)  The document is a Memorandum of Confirmation from Tasa Group dated

March 27, 2009, and contains information about the hourly rates charged by Mr.

Beckert and the cost to designate him as an expert. It sets out the terms of the

agreement between Graham and Tasa Group. It also contains the following language:

> You consent to the concurrent exclusive jurisdiction and venue of the
> Montgomery County Court of Common Pleas of the Commonwealth of
> Pennsylvania and the United States District Court for the Eastern
> District of Pennsylvania, with respect to the enforcement of this
> Memorandum, the collection of any amounts due under this
> Memorandum, or any disputes arising under this Memorandum.

(Doc. 14-1 at 10).  The defendants originally submitted the Memorandum only to

support their assertion that, should the Court not dismiss all of Graham's claims for

the reasons stated in their motions to dismiss, this action should be transferred to the

United States District Court for the Eastern District of Pennsylvania. *See* Doc. 14, at

29-30.  However, the defendants later utilized the exhibit as additional evidence to

---

[12] Graham first filed this motion to strike on July 22, 2013.  (Doc. 18.)  On February 27, 2014, the magistrate judge entered an order granting the motion on the ground that the exhibit was not authenticated. (Doc. 29.) On the same day, the defendants filed the declaration of Melinda Sugenis, President of Tasa Group, which satisfied to the magistrate judge the requirement that Exhibit D be authenticated.  As such, the magistrate judge vacated his previous order granting the motion to strike.  (Doc. 31).  Graham then renewed his motion to strike, and that renewed motion is pending before this Court.  (Doc. 32.)

counter Graham's argument that the Pennsylvania court did not have personal jurisdiction over him.

As grounds for his Motion to Strike, Graham asserts that he never has seen the document labeled Exhibit D.   Graham's argument that he has never seen the Memorandum of Confirmation goes to the weight of the evidence, rather than its admissibility.  In any event, the Court did not use the Memorandum in making any of its rulings as set out in this opinion.  As such, the motion to strike is due to be denied as moot.

## IV.   CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss (docs. 7, 14, 39, and 56) are due to be granted.  The entire action is due to be dismissed under the *Rooker-Feldman* doctrine for lack of subject matter jurisdiction.  The federal RICO and FDCPA claims are due to be dismissed with prejudice and the three state law claims dismissed without prejudice because, in the event *Rooker-Feldman* did not apply, Graham's federal claims would still be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim, and his state law claims would be dismissed under section 1367(c) without prejudice to re-filing in state court.  *See Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) ("When the *Rooker–Feldman* doctrine applies, there

is only one proper disposition: dismissal for lack of federal jurisdiction. A jurisdictional disposition is conclusive on the jurisdictional question: the plaintiff cannot re-file in federal court. But it is without prejudice on the merits, which are open to review in state court to the extent the state's law of preclusion permits." ). The magistrate judge's report and recommendation  (doc. 23) is due to be adopted and accepted.  Graham's motion to amend his complaint (doc. 12) is due to be denied, and his motion to strike (doc. 32) is due to be denied as moot.  A separate order will be entered.

   Done this 2nd day of March 2015.

               L. Scott Coogler
          United States District Judge
                    [160704]